UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAFFI BARSOUMIAN, M.D.,

                              Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                    14-CV-229S
ANN C. WILLIAMS, Esq., UNIVERSITY MEDICAL
RESIDENT SERVICES, P.C., JAMES M.
HASSETT, M.D., ROSEANNE C. BERGER, M.D.,
GREGORY CHERR, M.D., SUSAN ORRANGE, Ed.
M., KEVIN GIBBONS, M.D., THE STATE
UNIVERSITY OF NEW YORK SCHOOL OF
MEDICINE AND BIOMEDICAL SCIENCES,

                              Defendants.

## I. INTRODUCTION

Plaintiff Raffi Barsoumian, M.D., commenced this action in April 2014 seeking injunctive relief and damages for his alleged procedurally improper termination from a surgical residency program. Presently before this Court is Plaintiff's motion for a preliminary injunction directing that he be reinstated to the program pending the outcome of the present litigation. Also before this Court is the motion to partially dismiss the Complaint of Defendants S.U.N.Y. at Buffalo School of Medicine and Biomedical Sciences, Ann C. Williams, Esq., James Hassett, M.D., Roseanne Berger, M.D., Gregory Cherr, M.D., Susan Orrange, Ed. M, and Kevin Gibbons, M.D. (collectively "the S.U.N.Y. Defendants"). For the reasons that follow, Plaintiff's motion is denied and the S.U.N.Y. Defendants' motion is granted.

## II. BACKGROUND

**A.   The Prior Action**

This is the second action before this Court related to Plaintiff's participation in the surgical residency program ("the Program") at S.U.N.Y. Buffalo.  The prior related action was commenced in 2005, following Defendants' failure to reinstate Plaintiff into the Program after he successfully grieved the non-renewal of his employment agreement. Barsoumian v. University of Buffalo et al., No. 06-cv-831S.  Plaintiff was granted summary judgment with respect to his breach of contract claim against Defendant University Medical Resident Services, P.C. ("UMRS") and his procedural due process claims asserted under 42 U.S.C. § 1983 against Defendants Berger and Hassett in their official capacities. Barsoumian v. University of Buffalo et al., No. 06-cv-831S, 2012 WL 930331, *11 (W.D.N.Y. Mar. 19, 2012). The Court found Plaintiff's requested damages of lost future wages from a surgical practice to be speculative as a matter of law where such an award assumed not only the successful completion of the more than two years left in the Program, but also his successful certification as a surgeon by an unrelated party, the American Board of Surgery. Barsoumian, 2012 WL 930331 at *6; Barsoumian v. University of Buffalo et al., No. 06-cv-831S, 2013 WL 3821540, *4, 6 (W.D.N.Y. July 23, 2013).

The Court instead directed that Plaintiff be reinstated into the Program and left open the issue of whether Plaintiff was entitled to any monetary damages other than lost future earnings as a surgeon directly traceable to the contract breach. Barsoumian v. University of Buffalo et al., No. 06-cv-831S, 2012 WL 3095582, *3 (W.D.N.Y. July 30, 2012); Barsoumian, 2012 WL 930331 at *6.  Plaintiff moved for and was granted clarification on

his reinstatement in a probationary status. <u>Barsoumian</u>, 2012 WL 3095582 at *3. Specifically, the Court clarified that reinstatement to probationary status was consistent with the grievance committee's finding in Plaintiff's favor, but that this probation was a new rather than continuing probation, and therefore grievable. <u>Id.</u> at *2-3.

In September 2012, Plaintiff requested a temporary restraining order enjoining Defendants from requiring him to recomplete any part of the third year residency ("PGY3") curriculum he has already successfully completed in 2005 and directing that Plaintiff be installed to the same position that he would have occupied had he not been unlawfully removed from the Program in 2005. (Docket 06-cv-831S No. 132.) Plaintiff argued that he had not yet been "reinstated per this Court's March 19, 2012 Decision and Order." (<u>Id.</u>) The Court issued a bench decision on September 20, 2012, in which Plaintiff's request that the Court actively intervene in academic decisions regarding Plaintiff's appropriate curriculum was denied. (Docket 06-cv-831S No. 142 at 5-6.) Further, this Court expressly stated that, in light of Plaintiff's concession that he was reinstated to the Program as of June 4th, 2012 and the evidence that he had been actively participating in training rotations since that time, "[D]efendants have complied with my March 19th, 2012, order requiring the reinstatement of [P]laintiff." (<u>Id.</u> at 3-4, 8.) The motion was denied. (<u>Id.</u>)

Plaintiff was afforded an opportunity to brief the remaining issue of monetary damages related to the breach of contract.  In a July 23, 2013 Decision and Order, this Court found that the only damages requested still relied upon the speculative finding that, but for the breach, Plaintiff would have timely graduated from the Program and been certified as a surgeon. <u>Barsoumian</u>, 2013 WL 3821540 at *4. In the absence of any damages alleged to have stemmed directly from the breach of Plaintiff's Resident

3

Employment Agreement ("REA") with UMRS, such as lost residency wages from his contractually anticipated fourth and fifth residency years,[1] Plaintiff's request for monetary damages was denied and the case was closed. Id. at *5-6.

## B.    The Current Action

Plaintiff's current complaint alleges that he was improperly terminated from his reinstated position in the Program in violation of the University of Buffalo Graduate Medical Education Grievance Policy and Procedure ("GPP"), the grievance procedures incorporated by reference into Plaintiff's current REA with Defendant UMRS. (See Compl Ex A.)  The GPP provides for a three step grievance process, Step One of which is a discussion with the applicable program director with a witness present. (Compl Ex B at 3.)

Should the matter not be resolved at that stage, the resident may request a Step Two Grievance Hearing. (Id.)  This Grievance Hearing Committee ("the Committee") consists of three faculty members, one of whom serves as the committee chair, and two residents or fellows. Each party has the right to call witnesses and present documentary evidence, provided that witness lists and written materials are submitted no later than five working days prior to the hearing.  (Id. at 4.) The committee chair is given discretion with respect to certain procedures, including the order of testimony and the relevancy of evidence. (Id. at 4-5.) With respect to recesses and adjournments, the GPP provides:

> ■      The Grievance Hearing Committee chair may recess and reconvene, without additional notice, provided the hearing is reconvened in the presence of both parties and their respective representatives.

---

[1]Plaintiff inaccurately states in his submission that this Court found UMRS' breach was "not compensable through monetary damages." (Pl's Mem of Law at 10, Docket No. 5.)  Although lost future wages from a surgical practice were found to be speculative, lost residency wages might have been appropriate; however no such argument was raised.

> ■ Upon conclusion of the presentation of oral and written information, the Grievance Hearing record is closed.

> ■ The Grievance Hearing Committee will deliberate outside the presence of the parties and/or their respective representatives.

(Id. at 5.)  Any decisions of the Committee are determined by a majority of its members, and "[i]n the event a majority is unable to render a decision, a second Step Two Grievance Hearing Committee must be convened by the GME Director or designee within 20 days." (Id.)

Any party may seek a Step Three appeal of the Committee's hearing decision based on claims of limitations on or violations of due process during the Step Two hearing or for consideration of relevant new information not previously available. (Id. at 6.) Thus, "appeals that merely challenge the appropriateness of a determination following a full and fair review of a matter by a Step Two Grievance Hearing Committee" are not permitted under the GPP. (Id.)

As alleged in the Complaint, Plaintiff was informed during a Step One discussion on December 28, 2012 with Defendant Cherr, program director for the Department of Surgery, that he was being dismissed from the Program. (Compl ¶¶ 11, 35-37.)  Plaintiff requested a Step Two hearing, which was convened on September 19, 2013. (Id. ¶¶ 38, 50.)  Defendant Gibbons, program director for the Department of Neurosurgery, served as the chair of the Committee. (Id. ¶¶ 15, 53.) The Committee was charged with determining whether the decision to terminate Plaintiff "for failing to meet the criteria for removal from probation [was] supported by the evidence contained in the file and the testimony of witnesses (both written and oral)?" (Compl ¶ 52 Ex E.)   Defendant Cherr made a presentation in support of termination and presented no witnesses. (Id. Ex E.)  Plaintiff

5

called one witness in his favor and also made a presentation. (Id.) Both parties then made "[c]losing statements." (Compl ¶ 55 Ex E at 6.)

After excusing the parties, the Committee deliberated.   As indicated in the Committee report, after reviewing the evidence:

> Two specific areas of question or uncertainty had to do with the issue of credentialing, and the veracity, relevance and timelines of the patient incidents, both from the Program and the Resident's versions and rationalization.  There was skepticism about the Resident's version of some events, but there was also concern about the Program, during this time of transition, both in terms of change in the Program Director and the credentialing issue.

(Compl Ex E at 6.) As a result, "[t]he Committee, after lengthy discussion, unanimously decided additional information was required." (Id.)

Defendant Orrange informed Plaintiff on September 20, 2013 that the Committee requested testimony from two additional witnesses and that the Step Two Grievance Hearing would "be reconvened on Thursday, September 26, 2013." (Compl ¶ 66 Ex G.) Plaintiff objected on the ground that the Committee did not recess the hearing, but instead the record was closed. (Compl ¶ 67 Ex H.) Plaintiff's counsel also sent a letter directed to Defendant Williams as "Associate Counsel" for S.U.N.Y.'s Office of General Counsel similarly objecting to further proceedings. (Compl ¶ 80 Ex I.) Defendant Orrange informed Plaintiff by email that the committee chair, Defendant Gibbons, was acting within his discretion to recess and reconvene the hearing, without additional notice, as provided in the GPP. (Compl ¶ 83 Ex J.)

Plaintiff ultimately participated in the proceeding on September 26 over objection, which he reiterated in a prepared statement before the Committee.  (Compl ¶ 84, 87 Ex E at 7.) The two additional witnesses presented testimony, and although questioning was

6

initiated by Defendant Gibbons as the chair, both parties were afforded an opportunity to

question each witness. (Compl Ex E at 7-9.)  Further, each party was permitted to make

a closing statement. (Id. at 9-10.)  The Committee then met to deliberate and offer their

individual conclusions. (Id. at 10-11.)  After the evidence was discussed "at length," "[n]o

member believed further testimony was necessary to reach a decision." (Id.)

> The Committee unanimously voted to affirm the Program's termination of the
> Resident, in that the Resident  failed to meet the criteria for removal from
> probation and that the decision to terminate the Resident was and is
> supported by the evidence submitted and the testimony of the witnesses,
> and found the decision to terminate the Resident is consistent with the
> policies of the [University of Buffalo Graduate Medical Education Program].

(Compl Ex E at 11.)

Plaintiff filed a Step Three Appeal of the Committee's determination. (Compl Exs L,

M.)  The appeal was limited to Plaintiff's due process violation allegations because "no

relevant new information [was] presented to the GME Office that was not available at the

time of the Step Two Grievance Hearing." (Compl Ex M.) The Step Three Appeal

Committee found no due process violation with respect to the Step Two Grievance

Hearing, and Plaintiff was notified of this result on February 27, 2014.  (Compl ¶ 96.)

Plaintiff commenced the instant action on April 1, 2014.

### III.  DISCUSSION

Plaintiff moved for preliminary injunctive relief concurrent with his filing of the instant

action. (Docket No. 5.) Specifically, Plaintiff requests that Defendants be directed to

immediately reinstate him "to the PGY3 position that he occupied prior to his removal from

same in 2005." (Pl's Mem of Law at 24, Docket No. 5.)  The S.U.N.Y. Defendants have

also moved to dismiss "some or all" of Plaintiff's complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. (Docket Nos. 24, 32[2].) Because resolution of the motion to dismiss will impact consideration of Plaintiff's motion for preliminary injunctive relief, this Court will begin with the dismissal motion.

## A.    The S.U.N.Y. Defendants' Motion to Dismiss

The S.U.N.Y. Defendants argue that the majority of Plaintiff's claims as against them must be dismissed because: (1) the claims against Defendant Williams are unsustainable where she was acting in her role as Defendants' attorney; (2) the cause of action for fraud is not stated with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (3) the Complaint fails to state either a procedural or substantive due process claim against any of the S.U.N.Y Defendants; (4) all claims against the S.U.N.Y. School of Medicine and Biomedical Sciences, as well as the state law and § 1983 claims asserted against the individually named Defendants in their official capacities, are barred by the Eleventh Amendment.  The Court will begin with the issue of sovereign immunity.

### 1.    Sovereign Immunity under the Eleventh Amendment

Defendant argues that all claims against the State University of New York at Buffalo School of Medicine and Biomechanical Sciences must be dismissed, as well as the § 1983 claims asserted against the individually named Defendants to the extent they are sued in their official capacities. (SUNY Mem of Law at 16-18, Docket No. 25.)  Plaintiff responds that "Defendants overlook the fact that [Plaintiff's] complaint is the predicate document for

---

[2]The S.U.N.Y. Defendants initially filed their motion on May 13, 2014. (Docket No. 24.) On June 9, 2014, these Defendants filed an Amended Notice of Motion along with their reply memorandum of law that reflected the motion was also brought on behalf of Defendant Gibbons, who was not included in the original notice. (Docket No. 32.)

a preliminary, and then permanent injunction." (Pl's Mem in Opp'n at 11, Docket No. 31.)

As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir.2006) (citing Lapides v. Bd. of Regents, 535 U.S. 613, 618-19, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)); see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 67 (1984). For Eleventh Amendment purposes, S.U.N.Y. is an integral part of the government of the State of New York and when it or one of its constituent campuses is sued the State is the real party. Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990), *cert denied*, 501 U.S. 1211 (1991); see Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004).   Thus, where, as here, there has been no clear consent to suit in this federal forum, neither legal nor equitable relief is available against S.U.N.Y. at Buffalo School of Medicine and Biomedical Sciences. Dube, 900 F.2d at 594. Indeed, this was the basis for the agreed-upon dismissal of the School from Plaintiff's prior lawsuit.[3] Barsoumian v. Univ. at Buffalo, No. 06-CV-831S, 2009 WL 691297, *3 (W.D.N.Y. Mar. 11, 2009).   Moreover, Plaintiff's § 1983 claim against the School could not be maintained in any event because a state entity is not a 'person' within the meaning of that section.   Dube 900 F.2d at 595 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989)). The S.U.N.Y. School of Medicine and Biomedical Sciences is therefore dismissed from this

---

[3]These Eleventh Amendment issues were raised and resolved in the prior related action. Although a few additional individual defendants have been added, circumstances affecting sovereign immunity have not changed. It is therefore unclear why neither the Complaint nor the parties' submissions are more specific or why these matters needed to be relitigated.

action.

With respect to the individual Defendants, Plaintiff's causes of action appear to be asserted against them in their official and individual capacities, and the relief sought is both injunctive and monetary. (Compl. ¶¶ 4, 7, 9, 11, 13, 15 (asserting at the outset, but not in the individual causes of action, that these Defendants were being sued in both capacities.) To the extent Plaintiff is seeking monetary damages from these Defendants in their official capacities, such claims are dismissed.  (Compl. ¶¶ 152, 170, 188.)  However, in contrast to a state entity, "a state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment Bar." Dube, 900 F.2d at 595; see Pennhurst State Sch. & Hosp., 465 U.S. at 102.  Plaintiff may therefore seek injunctive relief from the individual Defendants in their official capacities in connection with his § 1983 cause of action.  This exception for prospective relief does not apply to claims based on an alleged violation of state law; therefore Plaintiff's tortious interference and fraud causes of action must be dismissed to the extent they are asserted against the individual Defendants in their official capacities. Pennhurst, 465 U.S. at 106; Dube, 900 F.2d at 595.  Finally, the Eleventh Amendment does not provide any immunity for state officials sued in their personal capacity, and therefore dismissal of such claims is not warranted on sovereign immunity grounds. Dube, 900 F.2d at 595.

> 2.   Failure to State a Claim

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12 (b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in Relator's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493

F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions.  Iqbal, 556 U.S. at 678.  In determining whether dismissal is warranted, a court is also entitled to consider, as relevant here:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003)(footnotes omitted), aff'd 396 F.3d 161 (2d Cir. 2005), cert denied, 546 U.S. 935 (2005); see Weiss v. Inc. Vill. of Sag Harbor,  762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).

### i. Plaintiff's § 1983 Due Process Claim

Plaintiff's third cause of action asserts a claim under 42 U.S.C. § 1983.  This section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Notably, § 1983 does not itself provide a source of substantive rights, but instead

provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Here, Plaintiff alleges that Defendants deprived him of his protected property right not to be terminated from the residency program without a due process hearing in accordance with the terms of his REA, which incorporates the UB GME Grievance Procedures Policy.  (Compl. ¶¶ 153-170, Ex A ¶ 8.)  This deprivation purportedly violated his substantive and procedural due process rights guaranteed by the Fourteenth Amendment.

A procedural due process claim is analyzed in two steps: " 'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) (quoting Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)).  The parties do not dispute that Plaintiff had a constitutionally protected property right not to be terminated from the residency program without procedural due process; indeed, that conclusion was reached in the prior related action. Barsoumian v. University at Buffalo, No. 06-CV-831S, 2012 WL 930331, *7 (W.D.N.Y. Mar. 19, 2012) (citing Adler v. County of Nassau, 113 F.Supp.2d 423, 431 (E.D.N.Y. 2000) (resident possessed constitutionally protected property right not to be terminated without due process hearing in accordance with terms of the contract)).

At issue then is the second step: the determination of whether constitutionally sufficient process was afforded prior to the deprivation of a protected right, which is determined by weighing private and governmental interests against the risk of erroneous

deprivation. <u>Spinelli v. City of N.Y.</u>, 579 F.3d 160, 170 (2d Cir. 2009) (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).  Thus, "due process is flexible and calls for such procedural protections as the particular situation demands." <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); <u>Monserrate v. N.Y. State Senate</u>, 599 F.3d 148, 158 (2d Cir. 2010). " 'The touchstone of due process, of course, is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.' " <u>Monserrate</u>, 599 F.3d at 158 (quoting <u>Spinelli</u>, 579 F.3d at 169) (alterations omitted)).  This opportunity to be heard must be given at a " 'meaningful time and in a meaningful manner.' " <u>Adler</u>, 113 F. Supp. 2d at 433 (quoting <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 437, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982)).

Plaintiff argues that his constitutional right was violated because procedural due process requires more than "simply a notice and opportunity to be heard," but instead requires full compliance with all the procedures specified in his contract. (Pl's Mem in Opp'n at 5-7.)  In his opposition, Plaintiff relies on <u>Adler v. County of Nassau</u>, where a plaintiff medical resident was found to have been deprived of his property interest in his residency employment and his liberty right in his reputation without *any* hearing in violation of his due process rights. 113 F. Supp. 2d at 431-32. The district court found that it could not appropriately determine damages prior to a name clearing hearing on the underlying allegations against the plaintiff, the veracity of which would preclude recovery. <u>Adler</u>, 113 F. Supp. 2d at 433.   In determining what process would be due at such a hearing, the district court found that the procedures set forth in the graduate medical education policy manual "comport with the 'meaningful manner' requirement." <u>Id.</u> at 433 (citing <u>Donato v.</u>

13

Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 633 (2d Cir. 1996) (where reasons for termination are accurate, "that ends the matter")).   Thus, the plaintiff resident's "contractual and Constitutional process due is the procedure set forth in the Manual or, if such procedure is no longer feasible, a similar procedure before an impartial decision maker upon which the parties agree." Adler, 113 F. Supp. 2d at 433.

This Court similarly stated in Plaintiff's previous action that the University Graduate Program's three-step grievance procedure was "sufficient to afford Plaintiff notice and an opportunity to be heard."   Barsoumian, 2012 WL 930331 at *7 (citing Adler, 113 F. Supp. 2d at 431).   However, contrary to Plaintiff's argument, neither this statement nor Adler supports the conclusion that any deviation from the contractual grievance procedures, no matter how trivial, constitutes a deprivation of constitutional due process.  Instead, as the S.U.N.Y. Defendants correctly argue, (Def's Mem of Law at 15; Def's Reply Mem of Law at 2-4), alleged deviations that do not affect the fundamental fairness of a hearing do not rise to constitutional proportions. Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972); see Brown v. Western Connecticut State Univ., 204 F. Supp. 2d 355, 366 (D. Conn. 2002) (alleged failure to tape record appeal hearing in violation of Student Handbook did not rise to level of constitutionally deficient process); Turof v. Kibbee, 527 F. Supp. 880, 885 (E.D.N.Y. 1981) (failure to afford informal pre-hearing conference required by college by-laws did not affect fundamental fairness of process where plaintiff nonetheless received a full hearing on the allegations against him).

Plaintiff contends that the Step Two Grievance Committee's solicitation of additional evidence by calling new witnesses after closing statements violated the contractual grievance procedures, and therefore his constitutional right to due process, because the

14

GPP: (1) states that "[u]pon conclusion of the presentation of oral and written information, the Grievance Hearing record is closed;" and (2) provides that the ability to call, examine, and cross-examine witnesses is the exclusive right of the parties, not the Committee. (Compl. ¶¶ 55-78, Ex B.)   Even assuming *arguendo* that Plaintiff's interpretation of the GPP is correct, Plaintiff does not dispute that he had notice and an opportunity to be heard on all the evidence considered prior to the Committee's ultimate deliberation and decision, even that testimony received after the initial "closing" of the proceedings.  (Compl ¶¶ 66-78, 80, 83-84, 87-88 Ex E at 7-10.)   Further, the only possible prejudice implicit in Plaintiff's allegations, although never clearly articulated therein, is the assertion that if no further evidence had been procured, the Committee's inability to reach a decision would have required a finding in his favor. (See Compl ¶ 65 (alleging that the University failed to prove that Plaintiff's dismissal was supported by the evidence presented).) The GPP does not place a burden of proof on either party, and there is nothing in the factual allegations or the exhibits to the Complaint that would support this conclusion. See Winnick, 460 F.2d at 449 ("[d]ue process does not invariably require the procedural safeguards accorded in a criminal proceeding");(Compl Ex E at 6 (Committee found additional testimony warranted due to skepticism about *both* Plaintiff's and the Program's version of events). Instead, the GPP expressly contemplates the deadlock situation alleged here, stating that "[i]n the event a majority [of the Committee] is unable to render a decision, a second Step Two Grievance hearing Committee must be convened by the GME Director or designee within 20 days." (Compl ¶ 80 Ex B at 5.)   Although initiated by the Committee rather than the Program Director, the matter was reconvened within a week. (Compl Ex E at 6-7.)

The alleged deviations from the GPP therefore do not undermine the fundamental

fairness of the proceedings.  Winnick, 460 F.2d at 550; Brown,  204 F. Supp. 2d at 366;

Turof, 527 F. Supp. at 885.   Moreover, it is also undisputed that Plaintiff's objection to

these alleged procedural improprieties was heard by a different panel during his Step

Three Appeal.   (Compl ¶¶ 90-91, 95-96.) Although the Step Three Appeal Committee did

not review the underlying merits of Plaintiff's dismissal, the GPP provided no right to such

a review absent relevant new evidence not previously available. (Compl Ex B at 6.) There

is also no constitutional right to review or appeal of a termination hearing that itself satisfied

the essential requirements of due process.  Winnick, 460 F.2d at 549 n. 5; Brown,  204 F.

Supp. 2d at 365-66.   Defendants are therefore correct that Plaintiff's Complaint fails to

state a claim pursuant to § 1983 that his procedural due process rights were violated.

Plaintiff's substantive due process claim similarly fails.  A valid substantive due

process claim may be based on evidence of governmental conduct that " 'is so egregious,

so outrageous, that it may fairly be said to shock the contemporary conscience.' "  Velez

v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cnty. of Sacramento v. Lewis, 523 U.S.

833, 847 n. 8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).   However, "where a specific

constitutional provision prohibits government action, plaintiffs seeking redress for that

prohibited conduct in a § 1983 suit cannot make reference to the broad notion of

substantive due process." Velez, 401 F.3d at 94; see Conn v. Gabbert, 526 U.S. 286, 293,

119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999).  Instead the conduct must be considered under

the more explicit provision. Conn, 526 U.S. at 293.

Here, Plaintiff's substantive due process claim is supported by the same allegations

on which his procedural due process claim rests. (See Compl ¶ 164 (alleging that

Defendants' actions and inactions were intended to "oppress [Plaintiff's] constitutional right

to both procedural and substantive due process").)   Because what is purported to be shocking about Defendants' alleged actions is the deprivation of a property right without procedural due process, the substantive due process claim must either be subsumed in the more particular procedural due process claim or must fail. <u>Velez</u>, 401 F.3d at 94. Finally, in light of the conclusion that there was no procedural due process violation here, this Court finds no merit in Plaintiff's argument that Defendants "have 'done it again,' rendering their conduct shocking or egregious enough to constitute a substantive due process violation. (Pl's Mem in Opp'n at 7.)

Plaintiff's third cause of action is therefore dismissed in its entirety.

### ii. Plaintiff's Claims Against Attorney Ann Williams

Plaintiff's second and fourth causes of action are asserted against Defendant Ann Williams, an Associate Counsel for the University of Buffalo, in her individual and official capacity. (Compl. ¶ 4.)  Defendants argue that these claims must be dismissed as against Williams because there are no specific supporting factual allegations tending to establish that she was acting outside her role as an attorney. (Def's Mem of Law at 8-9.)  Plaintiff argues that Williams' attorney status does not render her immune from liability, and the Complaint clearly alleges that, "being the legal advisor for the other defendants," she either "failed to stop the [other] defendants from continuing to deprive [Plaintiff] of his constitutional and contractual rights or actually told them [] to do so." (Pl's Mem in Opp'n at 3-5.)

"[U]nder New York law[4] an attorney generally cannot be held liable to third parties

---

[4]The parties do not dispute that New York law applies to the state law claims.

17

for actions taken in furtherance of his role as counsel unless it is shown that he did something either tortious in character or beyond the scope of his honorable employment." Kessenich v. Raynor, 120 F. Supp. 2d 242, 254 (E.D.N.Y. 2000) (quoting Newburger, Loeb & Co. v. Gross, 563 F.2d 1057, 1080 (2d Cir.1977), cert denied, 434 U.S. 1035 (1978)). "Thus, while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others." Newburger, Loeb & Co., 563 F.2d at 1080.

Here, there are no allegations in the Complaint that Williams acted beyond the scope of her employment by, for example, placing either her own interests or that of another before the interests or instructions of her clients. See Kessenich, 120 F. Supp. 2d at 254. Plaintiff alleges that on September 23, 2013, his counsel sent Williams and Assistant Attorney General David Sleight a letter stating that the reopening of the Step Two grievance hearing record contravened University policy. (Compl. ¶ 80.)

> Upon receipt of that letter, Williams and UMRS were advised and knew they were obligated to proceed in accordance with the UB GME GPP which clearly describes the procedure and process required in the event that a majority of the Step Two Grievance Committee members remain unable to render decisions to the questions which they have been charged to answer pursuant to conducting deliberations upon a closed Step Two Grievance Hearing record.

(Compl. ¶ 81.)  Plaintiff alleges that Williams "chose to disregard the UB GME GPP." (Compl. ¶ 82.)

Plaintiff asserts that Williams is therefore liable for tortious interference with the REA agreement because she knew of that contract's requirements and the grievance procedures incorporated therein, and held "certain supervisory responsibilities over all UB

18

officials in the SUNY at Buffalo Graduate Medical Education Consortium," including the other individually named Defendants. (¶¶ 136, 141, 143.)   Despite this, "Defendant Williams intentionally and maliciously chose not to direct the other defendants to follow the terms of the REA and the UB GM[E] GPP." (¶ 145.)   She further "intentionally and maliciously failed to prevent the other defendants from engaging in the impermissible actions in violation of the 'Conduct of the [] Step Two Grievance Hearing' . . . including, but not limited to, reconvening of the closed hearing." (¶¶ 146-147.) Notably, there are no allegations specifically describing Williams' fraudulent action or, indeed, any responsibility with respect to the REA agreement between Plaintiff and Defendant UMRS. (Compl ¶¶ 28, 171-188, Ex A.)

Plaintiff's allegations at best describe Williams' failure to correctly (in Plaintiff's opinion) advise the S.U.N.Y. Defendants regarding the requirements of the GPP, conduct that does not exceed the scope of her "privilege[] to give honest advice, even if erroneous." Newburger, Loeb & Co., 563 F.2d at 1080; cf. Kessenich, 120 F. Supp. 2d at 254 (motion to dismiss denied where complaint alleged acts outside the scope of defendant's role as attorney).   Indeed, Plaintiff relies solely on Defendant Williams' position as "legal advisor for the other defendants" to establish her liability. (Pl's Mem in Opp'n at 4.) Although an attorney should not be permitted to use his or her legal role as a shield behind which to engage in misconduct with impunity, permitting a cause of action to survive based on vague speculation regarding improper legal advice would invite both interference with the attorney-client relationship and vexatious litigation. The second and fourth causes of action are therefore dismissed as against Defendant Williams.

*iii. Failure to Plead Fraud with Particularity*

The S.U.N.Y. Defendants further argue that the fourth cause of action must also be dismissed as against Defendants Hassett and Berger for the failure to state with particularity the circumstances constituting fraud.   (Def's Mem of Law at 13-14, 16.) Plaintiff does not respond to this argument, and therefore this cause of action is properly dismissed under a theory of abandonment. Silverman v. Household Fin. Realty Corp. of N.Y., 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013); Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2008); Frink America, Inc. v. Champion Road Machinery Ltd., 48 F. Supp. 2d 198, 208-09 (N.D.N.Y. 1999).

In any event, the S.U.N.Y. Defendants are correct that dismissal is warranted on the merits as well.  The fourth cause of action alleges that Plaintiff was fraudulently induced into signing the June 4, 2012 REA agreement. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike [or other such nuisance] suits." DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Accordingly, a claim sufficiently stated in accordance with this rule must  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993); see Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004). Further, to state a claim for fraudulent inducement under New York law, "there must be a knowing misrepresentation

of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." GoSmile, Inc. v. Levine, 81 A.D.3d. 77, 81, 915 N.Y.S.2d 521 (N.Y.A.D. 1st Dep't 2010), lv dismissed, 17 N.Y.3d 782 (2011); see Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 580 (2d Cir. 2005).

Plaintiff's fourth cause of action raises allegations about Defendants generally, such as Plaintiff's reliance "upon the Defendants['] fraudulent misrepresentation that approval for an additional residency position had to be obtained from [the Accreditation Council on Graduate Medical Education ("ACGME")] to accommodate his reinstatement;" "that the temporary residency position which Defendants had obtained and to which they reinstated [Plaintiff] was identical to the permanent categorical residency position from which he had been unlawfully removed;" and "that the temporary residency position [to] which he was reinstated could accommodate a full contract year of training and/or successive renewal years as reflected in the June 4, 2012 REA." (Compl ¶¶ 173, 174, 176.)  Only Defendant Berger is identified as making specific statements on which Plaintiff relied:

> Through the language of the June 4, 2012 REA, [Plaintiff] was led to believe and relied upon the misrepresentation that the increase in the resident complement described by Berger in her May 11, 2012 email confirmed that the ACGME/RRC had granted the UB General Surgery Residency Program the type of increase which Berger described in her April 18th letter; 'beginning this academic year through 2015.', i.e., in essence, a tenth categorical residency slot which would accommodate his residency through its anticipated completion.

(Compl ¶ 175 [sic]; see Compl Ex N (Defendant Berger wrote that "[w]e have been granted a temporary increase in the resident complement by ACGME").)

Initially, Plaintiff's allegations do not clearly articulate why Berger's statements were fraudulent, as required by Rule 9(b). See Mills, 12 F.3d at 1175. Reference to Plaintiff's

preliminary injunction submissions is required to even construe the allegations as asserting that the prior reinstatement to a "temporary" rather than "permanent" residency position evidenced that Defendants did not intend or would not be able to obtain further authorization for his continued participation in the residency program. (See Pl's Mem of Law in Support of Preliminary Injunction at 4-5 n. 2, Docket No. 5-1 (referencing the "possibility" that Defendants would become ineligible to request further temporary increases in residency positions, potentially barring renewal of Plaintiff's "temporary" slot); Pl's Aff ¶ 40, Docket No. 5-2 (reinstatement to temporary slot was "overwhelming direct evidence of the Defendants' fraudulent intentions").)  This assertion is insufficient to state a claim. Fraudulent inducement requires a misrepresentation of a *present* fact, not a misrepresentation of future intent to perform under the contract. See GoSmile, Inc., 81 A.D.3d at 81 (the wrong alleged must be distinct from a breach of contract).  Here, even liberally construed, Plaintiff's contention is based on a belief that Defendants would breach the contract in the future. The fourth cause of action for fraud is therefore dismissed as against the S.U.N.Y. Defendants.  Further, because Plaintiff was on notice that this claim was being challenged for insufficiency on grounds applicable to all Defendants and afforded an opportunity to respond to this argument, this claim is dismissed as against UMRS as well. See In re Parmalat Sec. Lit., 377 F. Supp. 2d 390, 415 n. 166 (S.D.N.Y. 2005) (district court has power to dismiss *sua sponte* for failure to state a claim where notice and an opportunity to defend has been afforded); Nunez v. Goord, 172 F.Supp.2d 417, 433 (S.D.N.Y. 2001) (same) (citing Leonhard v. United States, 633 F.2d 599, 609 n. 11 (2d Cir. 1980), *cert denied*, 451 U.S. 908 (1981)).

**B.     Plaintiff's Motion for a Preliminary Injunction**

Plaintiff moves for a preliminary injunction "directing Defendants to reinstate him to a permanent PGY3 categorical residency position in Defendant S.U.N.Y. at Buffalo's General Surgery Residency Program" pending the outcome of the current case.  (Docket No. 5.)

"A preliminary injunction is an extraordinary remedy never awarded as of right." Monserrate v. N.Y.S. Senate, 599 F.3d 148, 154 (2d Cir. 2010) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). Generally, "[a] party seeking a preliminary injunction must show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " Cacchillo v. Insmed, Inc., 638 F.3d 401, 405-06 (2d Cir. 2011) (quoting Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir.2010)).

Plaintiff contends that his reinstatement to the surgical residency program is necessary to maintain the status quo. (Pl's Mem of Law at 7.) However, he has not been a member of the surgical residency program since his dismissal on December 28, 2012. Thus, Plaintiff is in fact requesting injunctive relief that "*alter[s]* the status quo by commanding some positive act," Citigroup Global Markets, Inc., 598 F.3d at 35 n. 4 (emphasis added), specifically reinstatement as an active surgical resident for the purpose of continued training during the pendency of this action, including renewals of his residency contract annually as necessary. This mandatory preliminary injunction should therefore "issue only upon a clear showing that the moving party is entitled to the relief requested,

23

or where extreme or very serious damage will result from a denial of preliminary relief." Id. (internal quotation marks omitted).

Plaintiff contends that he "easily pass[es]" this stricter standard as well. (Pl's Reply Mem of Law at 8.) This Court disagrees.  As a result of the S.U.N.Y. Defendants' successful motion to dismiss, the only causes of action remaining are for breach of contract against Defendant UMRS and for tortious interference with contract against Defendants Hassett,[5] Berger, Cherr, Orrange and Gibbons in their individual capacities. Notably, the viability of the tortious interference claim is dependent on Plaintiff successfully establishing a breach of contract.  Romanello v. Intesa Sanpaolo S.p.A., 97 A.D.3d 449, 454-55, 949 N.Y.S.2d 345 (N.Y.A.D. 1 Dep't 2012) (absent an actual breach of contract, no claim will lie against a third party for tortious interference), aff'd in relevant part, 22 N.Y.3d 881 (2013).

In his Complaint, Plaintiff alleges eight different breaches of the REA by Defendant UMRS:

> (1) refusing to reinstate him to one of the nine categorical residency slots which he had previously occupied prior to his unlawful removal from the residency program, (2) dismissing him from the residency program in 2012 in violation of the University's Academic Action Policy and Procedure, (3) refusing to follow the UB GME GPP as it pertained to the termination of [Plaintiff's] employment relationship which UMRS terminated by deviating from the said Policy [sic], (4) unjustly depriving [Plaintiff of] the opportunity to grieve the University's corrective action (counseling session) as it pertained to the 2005 Kaleida Health harassment matter, (5) unjustly depriving [Plaintiff of] proper notice and the opportunity to grieve the suspension action which the Kaleida Health System enforced in 2012, (6)

---

[5]Although named in the header for this cause of action, Hassett is not alleged to have "schemed and acted in a manner to deprive [Plaintiff] of the benefits and protections under the REA." (Compl ¶ 133.) The S.U.N.Y. Defendants, however, only moved for dismissal of the tortious interference claim as against Defendant Williams.

> unjustly barring [Plaintiff's] grievance rights pertaining to the court-ordered probation and (7) failing to provide [Plaintiff] with an education environment conducive to learning and successful progress in the residency program.  In addition, UMRS failed to secure authorization to train [Plaintiff] beyond June 30, 2012 and was in material breach of [Plaintiff's] REA as of on or about July 1, 2012.

(Compl ¶ 128.)

The gravamen of the majority of these claims is that Plaintiff was dismissed in contravention of the stated grievance procedures in the GPP.   Implicit in Plaintiff's arguments, both in support of the motion for a preliminary injunction and in opposition to the S.U.N.Y. Defendants' motion to dismiss, is the apparent belief that success on the merits in this action entitles him to an order directing a Step Two Grievance Hearing result in his favor.  (See Compl pg 34 (requesting "an order requiring Defendants to vacate the decision to terminate [Plaintiff]" and requiring them to "reinstat[e Plaintiff] to one of the nine permanent PGY3 categorical residency positions").) Plaintiff does not address the basis for his apparent belief that Defendants would be precluded from commencing either a new Step Two Grievance Hearing or restarting the grievance process from Step One with respect to Plaintiff's alleged deficient performance.

Indeed, there is no support for such a belief. Plaintiff alleges, for example, that upon the conclusion of the first day of the hearing, at which point Plaintiff argues the record was closed, "not a single Step Two Grievance Committee member was able to uphold Cherr's dismissal action based upon the evidence which he presented" to the Committee on that date. (Compl ¶ 62.) As stated above, however, the GPP does not place a burden of proof on either party, therefore there is no basis to conclude that Plaintiff is entitled to a favorable outcome due to Defendants' failure to present sufficient evidence. See Winnick, 460 F.2d

25

at 550 ("[d]ue process does not invariably require the procedural safeguards accorded in a criminal proceeding").  Further, the Committee's report indicates that its members had doubts about *both* parties' presentations, and therefore "unanimously decided additional information was required." (Compl Ex E at 6.) The allegations in the Complaint, considered in light of the exhibits annexed to it, therefore do not support the conclusion that but for the additional testimony Plaintiff would have prevailed.

Moreover, Plaintiff acknowledges in his Complaint that, pursuant to the GPP, the proper procedure in the event the Committee is unable to render a majority decision on the grievance is for a second Step Two Grievance Hearing to be convened.  (Compl ¶ 80 Exs E, I.)  Because Plaintiff alleges technical rather than substantive improprieties, there is nothing to support a conclusion that a new hearing would result in a different outcome.  He had an opportunity to be heard on the additional testimony presented to the Committee, and there is no allegation that evidence favorable to Plaintiff was improperly precluded. Further, there is nothing that would preclude those witnesses improperly called by the Committee during the first hearing from being heard at a procedurally proper time during a second hearing.

As such, this Court finds that Plaintiff's requested preliminary relief, reinstatement for the purpose of continuing his education unrestricted, to be broader than that to which he would be entitled upon the litigation's successful resolution in his favor: reinstatement for the purpose of a *properly conducted pre-termination hearing*. Plaintiff has therefore failed to make a "clear showing that [he] is entitled to the relief requested." Citigroup Global Markets, Inc., 598 F.3d at 35 n. 4.

It is also far from clear that Plaintiff will be able to prevail on the merits of any of his

remaining claims. Plaintiff argues that the Committee acted in contravention of the GPP's provision that "[u]pon conclusion of the presentation of oral and written information, the Grievance Hearing record is closed." (Compl Ex B at 5.)  The GPP further provides, however, that the Committee chair has broad discretion in the management of the proceedings, including the authority to determine whether evidence is relevant or should be excluded, set time limits, and, most notably, "recess *and reconvene*, without additional notice, provided the hearing is reconvened in the presence of both parties and their respective representatives." (Id. at 4-5 (emphasis added).)  Although Plaintiff will have the opportunity to develop his argument that a "closed" hearing may not be "reconvened" under the GPP,[6] at this stage of the proceedings he has not established a likelihood of success on the merits of this claim.  See generally Biediger v. Quinnipiac Univ., 691 F.3d 85, 107 (2d Cir. 2012) (findings of fact and conclusions of law made in determining a preliminary injunction motion are predictive rather than binding).

The other alleged breaches of contract are similarly suspect.   The assertion that Plaintiff was denied the ability to grieve a 2005 sexual harassment allegation appears to be moot where Plaintiff was terminated for failing to meet the criteria for removal from probation.[7] (Compl Ex E.) The alleged failure to reinstate Plaintiff to one of nine

---

[6]This issue of contract language ambiguity is one for a court to decide in the first instance by "looking within the four corners of the document, not to outside sources." Kass v. Kass,  91 N.Y.2d 554, 566, 696 N.E.2d 174 (1998). Therefore resolution of this matter will likely not involve prolonged and complex litigation, limiting any potential delay in Plaintiff's training should he ultimately be successful in the present action *and* at a new termination hearing.

[7]According to the Committee's report, the issue of sexual harassment came up only collaterally to a discussion of Plaintiff's possible threats or disrespect of faculty, specifically a prior conversation in which Plaintiff asserted that any issue of harassment should be investigated by a University agency other than the Program. (Compl Ex E at 5.) Thus, the underlying merits of any harassment allegation were not considered by the Committee as grounds for termination.

"permanent" residency slots fails to constitute a breach of contract where: (1) the REA makes no reference to Plaintiff's right to such a slot; (2) the REA states that responsibility for accreditation is the obligation of the University; (3) no breach of the REA's renewal provision has yet occurred; and (4) no anticipatory breach of contract claim is clearly stated. (See Compl Ex A); see generally Long Island R. Co. v. Northville Indus. Corp., 41 N.Y.2d 455, 463-64, 362 N.E.2d 558 (1977) (discussing anticipatory repudiation of a bilateral contract).

It must be noted at this point, particularly in connection with the permanent residency slot allegations, that Plaintiff continually asserts that Defendants have failed to comply with this Court's March 19, 2012 reinstatement order. (Compl ¶¶ 23-25; Pl's Mem of Law at 1-3, 5, 11, 24.)  In the prior related action, Plaintiff moved for injunctive relief similarly arguing, among other things, that Defendants failed to comply with this order by reinstating him to the very same position that he would have held absent the improper removal in 2005. (Docket 06-cv-831 No. 132.)  In a bench decision issued on September 20, 2013, this Court noted that Plaintiff had "conceded in his submissions on a prior motion that he was reinstated to the surgical residency program as of June 4th, 2012." (No. 06-cv-831, Docket No. 142 at 3-4.)  After discussing Plaintiff's objections to the conditions of his reinstatement, this Court specifically stated that "[D]efendants have complied with my March 19th, 2012, order requiring the reinstatement of [P]laintiff." (Docket 06-cv-831 No. 142 at 8.) The issue of compliance with this prior order has therefore been resolved.[8]

---

[8]As such, and in light of the fact that the prior order did not preclude Plaintiff from grieving, where appropriate, conduct occurring after reinstatement, Defendant UMRS' argument that Plaintiff's motion for preliminary injunctive relief is untimely is without merit. (UMRS Mem in Opp'n at 6-8.)  Plaintiff timely filed the present action and motion following the conclusion of the relevant grievance process.

Plaintiff's remaining breach of contract allegation is that UMRS failed to provide him "with an education environment conducive to learning and successful progress in the residency program." (Compl ¶ 128.)  In addition to the REA's express statement that the Program rather than UMRS was responsible for "the educational curriculum, content and experience," (Compl Ex A ¶ 7(d)), it is unclear how this claim is a sustainable breach of contract claim rather than an impermissible one for educational malpractice. See Helbig v. City of New York, 212 A.D.2d 506, 507, 622 N.Y.S.2d 316 (N.Y.A.D. 2d Dep't 1995) (New York State does not recognize a cause of action for damages for educational malpractice, such as negligence in providing a sufficient education); Clarke v. Trustees of Columbia Univ.of City of New York, No. 95 Civ. 10627 (PKL), 1996 WL 609271, *5 (S.D.N.Y. Oct. 23, 1996) (finding that New York law would recognize breach of implied contract based on, for example, failure to provide specified services or abide by designated number of instructional hours).

 Plaintiff has therefore also failed to establish a likelihood of success or, indeed, any serious question on the merits at this stage of the proceedings.  See generally Biediger, 691 F.3d at 107.

## IV.  CONCLUSION

The S.U.N.Y Defendants have established their entitlement to dismissal of all claims against S.U.N.Y. at Buffalo School of Medicine and Biomedical Sciences; the second cause of action for tortious interference as against all the individual Defendants in their official capacities as well as Defendant Williams in her individual capacity; the third cause of action under § 1983 in its entirety; and the fourth cause of action for fraud also in its entirety as against all Defendants.  Of these causes of action, only the fraud cause of action could

29

potentially benefit from an opportunity to replead.  However, as concluded, this claim was found to be abandoned due to Plaintiff's failure to oppose this portion of the motion to dismiss.  Therefore all the referenced claims are dismissed with prejudice.  Finally, because Plaintiff failed to establish either a clear right to the scope of the injunctive relief requested or a likelihood of success on the merits of the remaining claims, the motion for a preliminary injunction is denied.

## V.  ORDERS

IT IS HEREBY ORDERED that Plaintiff's Motion for a Preliminary Injunction (Docket No. 5) is DENIED;

FURTHER, that the S.U.N.Y. Defendants' Motion to Dismiss (Docket No. 32) is GRANTED to the extent stated above;

FURTHER, that Defendants Ann C. Williams, Esq., and S.U.N.Y. at Buffalo School of Medicine and Biomedical Sciences are terminated from this case.

SO ORDERED.

Dated: June 29, 2014
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
